Filed 12/18/24  P. v. Strong CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANTE JOHN STRONG,<br><br>    Defendant and Appellant. | F086864<br><br>(Super. Ct. No. BF169555A)<br><br><br>**OPINION** |

### <u>THE COURT</u>[*]

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell and Kimberley A. Donohue, Assistant Attorneys General, Louis M. Vasquez, Ian Whitney and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]	Before Levy, Acting P. J., Smith, J. and Meehan, J.

**<u>INTRODUCTION</u>**

Appellant Dante John Strong appeals from a resentencing following remittitur in a prior appeal.[1]  Appellant argues the trial court improperly imposed the upper term for a firearm enhancement, by relying upon aggravating factors not proven true beyond a reasonable doubt to a jury or judge in a court trial.

While the instant appeal was pending, the California Supreme Court decided *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*).  This court ordered the parties submit supplemental briefing on the applicability of the *Lynch* standard of review, specifically whether a jury would have found true beyond a reasonable doubt all of the aggravating facts upon which the court relied to impose the upper term on the firearm enhancement.  Both appellant and the people subsequently filed supplemental briefs.  Appellant argued not all of the aggravating facts would have been found true beyond a reasonable doubt based on the record and therefore the trial court's error in relying on those facts was not harmless.  The People in turn argued a jury would have found true beyond a reasonable doubt each factor relied upon by the court to impose the upper term.

We vacate the sentence, and remand for resentencing consistent with this opinion. In all other respects, the judgment is affirmed.

**<u>PROCEDURAL HISTORY</u>**

On February 16, 2018, appellant was charged with first degree murder (Pen. Code, § 187, subd. (a);[2] count 1), attempted first degree murder (§§ 187, subd. (a), 664; count 2), and attempted robbery (§§ 212.5, subd. (c), 664; count 3).  It was further alleged the murder was committed during the commission of a robbery (§ 1902.2, subd. (a)(17))

---

[1]    *People v. Strong* (Mar. 23, 2023, F079628) [nonpublished opinion].  The prior appeal was initially filed in the Fifth District Court of Appeal, but was ordered transferred to the Second District Court of Appeal, Division Five, by the Supreme Court on August 9, 2022.

[2]    Undesignated code references are to the Penal Code.

and appellant personally discharged a firearm causing great bodily injury or death in the commission of each count (§ 12022.53, subd. (d)).

On March 29, 2019, a jury found appellant not guilty of the murder, attempted murder, or robbery. The jury found appellant guilty of the lesser-included offense of involuntary manslaughter on count 1 (§ 192, subd. (b)), and the lesser-included offense of attempted voluntary manslaughter on count 2 (§§ 192, subd. (a), 664). The jury found true the firearm enhancement pursuant to section 12022.5, subdivision (a) as to both counts.

On July 9, 2019, the trial court sentenced appellant. The trial court imposed the lower term of two years for the involuntary manslaughter, and an upper term of 10 years for the firearm enhancement on count 1, and one year for the attempted voluntary manslaughter, with one year for the firearm enhancement on count 2, for an aggregate term of 14 years in prison.

Appellant filed a timely appeal. The Second District Court of Appeal, Division Five affirmed appellant's judgment but remanded the case for full resentencing due to the amendments to section 1170, subdivision (b) enacted by Senate Bill No. 567. (2021−2022 Reg. Sess.) (Stats. 2021, ch. 731, § 3, eff. Jan 1, 2022.)

On September 13, 2023, appellant was resentenced. The trial court reimposed the same sentence, including the upper term for the firearm enhancement pursuant to section12022.5, subdivision (a) on count 1.

<strong><u>STATEMENT OF FACTS</u></strong>

*Commitment Offense*

We restate the facts relevant to the issues presented in this appeal.[3]

---

[3]    The facts are recited in whole in the prior nonpublished opinion, *People v. Strong*, *supra*, F079628.

On August 26, 2017, appellant's girlfriend, Blu Tuch negotiated the purchase of marijuana from Raymond Martinez. Tuch agreed to meet Raymond[4] at the Fastrip gas station and convenience store parking lot, one of the busiest places in the city of Mojave.

On August 27, 2017, Raymond drove to the Fastrip parking lot along with his father, Richard Martinez, and friend, Jeremiah Flowers. Tuch in turn arrived with appellant. Once Raymond informed Tuch he had arrived, Tuch and appellant approached Raymond's car. Flowers, who had been sitting in the front passenger seat, moved to the back, and appellant got into the front passenger seat. Although surveillance cameras captured the events outside the car, the events within the car were disputed.

Flowers stated that appellant got into the car and introduced himself. He asked to see the marijuana, and Raymond complied. Flowers did not see appellant pull out any money, but claimed appellant almost immediately brandished a gun in his right hand. Richard, who was extremely intoxicated and had been sleeping in the back seat, jumped up when he heard someone say " 'give me that shit.' " Richard saw the gun pointed at Raymond and " 'jumped up across' " from the back seat, struggling with appellant over the gun. The gun discharged, but Flowers could not tell if anyone had been hit.

Appellant in turn claimed that he did not immediately brandish the gun. He stated that instead, he brought out the money. Raymond grabbed the money from his hand while Richard attacked him from the back seat. Appellant then pulled his gun out to protect himself, and it discharged while he fought for it with Richard.

Appellant then took Raymond's key out of the ignition and ran from the car. Richard and Raymond pursued appellant. Flowers, in shock, stayed by the car and heard two more gunshots. Raymond staggered back to the car bleeding from his throat and told

---

**4**     To avoid confusion, we refer to the Martinez family members by their first names. We intend no disrespect.

4.

Flowers to call the police because he had been shot. Raymond succumbed to the injury in the parking lot.

Richard continued pursuing appellant, and followed him back to appellant's car, a black Honda. Appellant attempted to drive away but his car stalled, allowing Richard to break the passenger side window and begin to punch Tuch, who was sitting in the passenger seat. Appellant got out of the car and shot Richard to protect Tuch, then both appellant and Tuch ran across the street. Once Richard stopped pursuing them, appellant returned to his car, picked up Tuch, and left.

Richard returned to Raymond's car, where Flowers was trying to help Raymond. Richard was taken to a hospital where he was treated for gunshot wounds to his face and chest. Richard identified appellant as the shooter at trial, but could not remember many details of the incident due to being intoxicated.

Appellant and Tuch were apprehended nearby by three sheriff's deputies. Deputies recovered a .38-caliber unfired round, and two .38-caliber shell casings at the Fastrip parking lot. They also recovered two bags of marijuana from Raymond's car, but did not locate any money in either Raymond's or appellant's car.

*Initial Sentencing Hearing*

On July 9, 2019, the trial court held appellant's initial sentencing hearing. The probation officer's report filed on April 22, 2019, and reviewed by the court indicated no circumstances in aggravation, but recommended the upper term of 10 years on the firearm enhancement. A memorandum from the probation department filed on July 8, 2019, explained that the probation report recommended the upper term because the discharge of the firearm presented circumstances which were aggravated compared to other crimes with a section 12022.5, subdivision (a) enhancement. These circumstances were first, there were multiple discharges of the firearm and there was a statement within the incident report that the gun had to be racked twice to make it operational. Second, the discharge was in a public area that would represent a risk beyond the elements of the

offense. Third, the circumstances showed the parties were meeting to engage in the purchase of marijuana, which was unlawful activity.

At sentencing, the trial court discussed the first circumstance as follows:

> "[COURT]: With regard to the first [circumstance in aggravation]. It says first there were multiple discharges of the firearm and there was a statement within the incident report that the gun had to be racked twice to make it operational. [¶] Refresh my memory. Did the deputy that seized the gun—was that when he didn't put gloves on and tried to clear the gun, or am I confusing this with another case?

> "[DEFENSE COUNSEL]: Well, this is the case. And also, your Honor, I believe the record clearly was there was actually only two actual firings of the firearm in this case, two spent casings. I mean, I can't swear by that, but I believe there were two—there were two shots actually fired.

> "[COURT]: There were also some live rounds found—

> "[DEFENSE COUNSEL]: There were.

> "[COURT]: —on the scene.

> "[DEFENSE COUNSEL]: There were, but they weren't actually fired. [¶] … [¶] And I believe it was two—the Court is, I believe correct. There were live rounds. I'm not disputing that. But as far as spent casing firings, I believe there were two.

> "[COURT]: The live rounds I was referring to were out on the ground, in the scene.

> "[DEFENSE COUNSEL]: Yeah. I am agreeing. I am not disputing that.

> "[COURT]: Which would be presumably because they were ejected from the firearm.

6.

"[DEFENSE COUNSEL]: That could be ejected, as there was evidence presented, with somebody who had a gun jammed. That doesn't mean you were firing it at somebody. You could be—as there was testimony from I believe multiple officers, including the investigating officer whose name escapes me admitted you could. So you could be unjamming it as opposed to pointing it and firing it.

"[COURT]: [People], your recollection of the evidence?

"[PEOPLE]: That is. And I agree that there [are] multiple ways that live rounds could hit the ground. But I think the terminology in here is had to be racked to make it operational. A spent casing being by the Scion and then a spent casing being by the Honda and then a live round being in between the two, obviously the evidence points to the gun was fired. The gun had to be manipulated in some fashion to make it operational before it could be fired the second time.

"[COURT]: Because of the live round on the ground.

"[PEOPLE]: Correct. [¶] … [¶] So perhaps the verbiage in here isn't exacting. But I think the understanding of what occurred is correct. The other time that the live round was located was over on K Street. And it can be seen on video that [appellant] was manipulating the gun in some fashion, and then ultimately a live round was found on the ground.

"[COURT]: All right.

"[DEFENSE COUNSEL]: But what I think is important two points here. This isn't a situation where you had to rack the gun twice while pointing it at someone to shoot it, No. 1, which would give more time—

7.

> "[COURT]: I'm not going to find it was racked twice. We will just eliminate that."[5]

The trial court ultimately ruled:

> "I am only going to find one circumstance in aggravation. This is as to Count 1. I do find that the defendant discharged the firearm in a public area that represents a risk beyond the elements of the offense.
>
> "And in making my sentencing decision, all of my sentencing decisions are based on the evidence presented during the trial. So I am making that very clear that all of my sentencing decisions are based on the evidence presented during the trial.
>
> "So the evidence was that the defendant in a criminal manner discharged his gun in a public area. It was a busy parking lot. Apparently that was one reason why the decision was made to engage in the transaction, because there was a feeling that in a high traffic public area the likelihood of someone engaging in criminal behavior like violence or robbery would be substantially less. So I do find that's a circumstance in aggravation as to Count 1. [¶] … [¶]
>
> "I am also not finding the other circumstances in aggravation that [the People] had requested."

*Resentencing Hearing*

On September 13, 2023, the trial court held appellant's resentencing hearing. An updated supplemental probation officer's report prepared on September 5, 2023, and reviewed by the court, indicated no circumstances in aggravation.

The trial court initially stated,

> "I agree with Probation that three factors are important as it relates to the discharge of the gun. First, there was multiple discharges of the firearm and there was a statement within the incident report that the gun had to be racked twice to make it operational. The second, discharge was in a public

---

[5] The trial court ultimately did not consider the multiple discharges as an aggravating factor because the People conceded it would be an impermissible dual use of the facts.

8.

area to represent a risk beyond the elements of the offense. Third, the circumstances show that the parties were meeting to engage in the purchase of marijuana, which would be an unlawful activity. Thus the circumstances of the offense are aggravated compared to other crimes with a …

[s]ection 12022.5[, subdivision] (a) enhancement. I do believe there is evidence of circumstances in aggravation that could justify imposition of the upper term of ten years on that 12022.5[, subdivision] (a) enhancement."

Appellant briefly addressed the aggravating circumstance alleging he racked the gun multiple times. However, appellant did not argue that the fact was not properly proven, rather appellant stated that in the context of the case and the jury's finding of imperfect self-defense, racking the gun was not an aggravating factor. Further, appellant did not argue any of the other aggravating circumstances were not properly proven, and instead focused on mitigating factors.

The People argued, "[i]n this case [appellant] did rack the gun multiple times. He did shoot multiple people. That's the nature that [the probation officer] was referencing in his memorandum that he provided to the Court. This was not a case of self-defense. It was a case for a lesser included offense that he was convicted of. Yes, he was. I agree with that. It was not self-defense. He shot and affected the lives of two people, murdered one or killed one. So I would ask the Court to impose the greatest term that it can as it relates to the enhancement and consistent with the memorandum by [the probation officer]."

The trial court ultimately concluded,

"I do find that the aggravating factors with regard to the [section] 12022.5[, subdivision] (a), multiple discharges of the firearm, the gun had to be racked twice to make it operational. The second the discharge was in a public area, that represents a risk beyond the elements of the offense; and third, the circumstances show the parties were meeting to engage in the purchase of marijuana, which is an unlawful activity. I agree with the Probation memorandum that these

9.

circumstances are aggravated compared to other crimes with a [section] 12022.5[, subdivision] (a) enhancement.

"I do find that it would be in the interest of justice to impose the upper term of ten years as to the [section] 12022.5[, subdivision] (a) allegation in Count 1."

## DISCUSSION

### I. Omission of a Jury Trial Was Not Harmless Beyond a Reasonable Doubt As to Every Aggravating Fact

Appellant argues the circumstances in aggravation relied upon by the trial court to impose the upper term for the section 12022.5, subdivision (a) enhancement on count 1 were not properly proven, and the error was not harmless. The People in turn argue the circumstances are supported by overwhelming evidence in the record and any error was harmless beyond a reasonable doubt. We agree with appellant, and find that a fact underlying one of the circumstances is not uncontested or supported by overwhelming evidence or the jury's actual verdict, and reliance on that fact was error.

### A. Legal Standard

Section 12022.5, subdivision (a) punishes any person who personally uses a firearm in the commission of a felony or attempted felony with three, four, or 10 years in prison. Section 1170.1, subdivision (d)(1) states "[i]f an enhancement is punishable by one of three terms, the court shall, in its discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)."

Section 1170.1, subdivision (d)(2) permits the imposition of a sentence exceeding the middle term only "when there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

Pursuant to *Lynch*, *supra*, 16 Cal.5th 730, "under the current statute a Sixth Amendment violation occurs when the trial court relies on unproven aggravating

10.

facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established. The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements. If the reviewing court cannot so determine, applying the *Chapman*[6] standard of review, the defendant is entitled to a remand for resentencing." (*Lynch*, at p. 768.)

Pursuant to *Chapman*, a violation of the federal Constitution requires reversal unless the error is " 'harmless beyond a reasonable doubt.' " (*People v. Hendrix* (2022) 13 Cal.5th 933, 942.) "This prejudice inquiry does not allow us to uphold the trial court's imposition of an upper term sentence based on some subset of aggravating facts." (*Lynch*, *supra*, 16 Cal.5th at p. 761.) Rather, appellant is entitled to reversal and remand unless this court can "conclude that the omission of a jury trial was harmless beyond a reasonable doubt as to *every* aggravating fact[.]" (*Id*. at p. 775.)

"In making this determination, we may ' "examine[ ] what the jury *necessarily* did find and ask[ ] whether it would be impossible, on the evidence, for the jury to find *that* without *also* finding the missing fact as well." [Citation.] In other words, if " '[n]o reasonable jury' " would have found in favor of the defendant on the missing fact, given the jury's actual verdict and the state of the evidence, the error may be found harmless beyond a reasonable doubt.' [Citation.] We may also find the omission harmless if we can conclude beyond a reasonable doubt 'that the omitted [fact] was uncontested and supported by overwhelming evidence.' " (*Lynch*, *supra*, 16 Cal.5th at p. 775.)

---

**6** *Chapman v. California* (1967) 386 U.S. 18.

**B. Analysis**

*Forfeiture*

The People argue appellant forfeited his claim that the aggravating circumstances were not found true beyond a reasonable doubt by a jury, because he failed to object at the 2023 sentencing hearing.

"Ordinarily, an appellate court will not consider a claim of error if an objection could have been, but was not, made in the lower court. [Citation.] The reason for this rule is that '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' [Citations.] '[T]he forfeiture rule ensures that the opposing party is given an opportunity to address the objection, and it prevents a party from engaging in gamesmanship by choosing not to object, awaiting the outcome, and then claiming error.' " (*People v. French* (2008) 43 Cal.4th 36, 46, (*French*).)

However, "a '[d]efendant's failure to object also would not preclude his asserting on appeal that he was denied his constitutional right to a jury trial. [Citations.]' [Citations.] Our state Constitution requires that waiver of jury trial in a criminal case be made 'by the consent of both parties expressed in open court by the defendant and the defendant's counsel.' (Cal. Const., art. I, § 16.)" (*French*, *supra*, 43 Cal.4th at p. 46.)

"The requirement of an express waiver applies to the constitutional right to a jury trial, but not to jury trial rights that are established *only* by statute." (*French*, *supra*, 43 Cal.4th at p. 46, emphasis added.) For example, "[t]he right to have a jury determine the truth of a prior conviction allegation does not flow from the jury trial provision of article I, section 16 of the California Constitution or the Sixth Amendment of the United States Constitution. It is derived from statute." (*People v. Vera* (1997) 15 Cal.4th 269, 277, abrogated by *French*, *supra*, 43 Cal.4th 36.) Therefore, failure to object when a trial court determined the truth of a prior conviction allegation without an express waiver of a

defendant's right to a jury trial did not violate the state constitution and forfeited the argument on appeal. (*Vera*, at p. 278.)

Although the right to a jury trial on aggravating factors is now enumerated in statute, this right is likewise based in the Sixth and Fourteenth Amendments to the United States Constitution. (*Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*).) "The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment's due process clause, 'provides that those "accused" of a "crime" have the right to a trial "by an impartial jury." This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt.' [Citations.] In the context of California's determinate sentencing scheme, [*Cunningham*] held that, 'under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.' [Citation.] 'Inhering in that guarantee is an assurance that a guilty verdict will issue only from a unanimous jury.' " (*Lynch*, *supra*, 16 Cal.5th at p. 742.)

The United States Supreme Court in *Cunningham* observed that several states had modified their systems to retain determinate sentencing. "They have done so by calling upon the jury—either at trial or in a separate sentencing proceeding—to find any fact necessary to the imposition of an elevated sentence. As earlier noted, California already employs juries in this manner to determine statutory sentencing enhancements. [Citation.] Other States have chosen to permit judges genuinely 'to exercise broad discretion … within a statutory range,' which, 'everyone agrees,' encounters no Sixth Amendment shoal. [Citation.] California may follow the paths taken by its sister States or otherwise alter its system, so long as the State observes Sixth Amendment limitations declared in this Court's decisions." (*Cunningham*, *supra*, 549 U.S. at pp. 293–294, fns. omitted.)

In 2007 and in the wake of *Cunningham*, the California Legislature amended section 1170 to "provide that the choice between the lower, middle, and upper terms 'shall rest within the sound discretion of the court,' with the court 'select[ing] the term which, in the court's discretion, best serves the interests of justice' and stating reasons for its decision. [Citation.] The amendment gave judges 'broad discretion in selecting a term within a statutory range, thereby eliminating the requirement of a judge-found factual finding to impose an upper term. [Citations.] [It] amended section 1170 so that (1) the middle term [was] no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge [had] the discretion to impose an upper, middle or lower term based on reasons he or she states.' " (*Lynch*, *supra*, 16 Cal.5th at pp. 747−748.) This determinate sentencing scheme, as described by *Cunningham*, "encounters no Sixth Amendment shoal." (*Cunningham*, *supra*, 549 U.S at p. 294.)

In 2022, "the Legislature again amended section 1170 to provide that the trial court 'shall,' in its discretion impose a sentence 'not to exceed the middle term' [citation], except in the following circumstance: 'The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of' an upper term sentence, and 'the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.' (§ 1170[, subd.] (b)(2); Stats. 2021, ch. 719, § 2; see also § 1170.1, subd. (d)(1), (2) [imposing same requirement for enhancements punishable by one of three terms])." (*Lynch*, *supra*, 16 Cal.5th at p. 748.) Under this determinate sentencing scheme, aggravating facts once again " '[expose] a defendant to a greater potential sentence' " and " 'must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.' " (*Id.* at p. 742.) Therefore, appellant's right to a jury trial on aggravating circumstances is mandated by the Sixth and Fourteenth Amendments, and "under the

14.

current statute a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch*, at p. 768.)

Because the trial court's failure to obtain a valid waiver of appellant's right to a jury trial on the aggravating circumstances, or to hold such a trial, implicates appellant's federal constitutional rights to a jury trial, appellant has not forfeited the issue on appeal by failing to object below.

*Harmless Error Review*

Appellant argues the three circumstances in aggravation in this case were not found true by a jury, and the trial court therefore erred by imposing the upper term on the section 12022.5 firearm enhancement.

The People in turn argue any such error was harmless, because a jury would have found all of the aggravating circumstances true beyond a reasonable doubt. The People assert that the evidence is undisputed the shooting occurred in a public place, because the car was parked in the parking lot of an open gas station, it is undisputed appellant and the victims were meeting to engage in the purchase of marijuana, an unlawful activity, and it is undisputed that appellant discharged his gun at least twice, because two shell casings were found on the ground. The People then assert while there was no trial evidence that the gun was racked twice, if there is some dispute about how many times appellant racked the gun, the fact that it was discharged multiple times is sufficient to support the aggravating factor.

"The current statute specifically empowers the court to choose an upper term only if the facts supporting each aggravating circumstance on which it relies have been resolved by the jury or otherwise established as the statute allows." (*Lynch*, *supra*, 16 Cal.5th at p. 757.) "The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence…." (*Id*. at p. 768.)

15.

The Supreme Court in *Lynch* did not distinguish between the aggravating circumstances considered by the trial court and the facts the jury must find true beyond a reasonable doubt, because the issue was not argued by the parties. (*Lynch*, *supra*, 16 Cal.5th at p. 770.) The court did note, however, "[t]he text of section 1170[, subdivision] (b)(2)[7] itself 'arguably allows for a distinction to be drawn between "circumstances in aggravation" that can justify the imposition of the upper term and "*the facts underlying* those circumstances" that the jury must find true beyond a reasonable doubt.' " (*Lynch*, at p. 770.)

"In the context of California's determinate sentencing scheme, [*Cunningham*] held that, 'under the Sixth Amendment, any *fact* that exposes a defendant to a greater potential sentence must be found by a jury....' " (*Lynch*, *supra*, 16 Cal.5th at p.742, emphasis added.) The plain language of section 1170.1, subdivision (d)(1)[8] requires the *facts* underlying the circumstances in aggravation be found true beyond a reasonable doubt by a jury or judge in a court trial.

Therefore, we clarify that for purposes of determining whether a trial court's failure to hold a jury trial on aggravating circumstances, or secure an express waiver, is harmless error, it is not enough that *some* aggravating facts supporting an aggravating circumstance are undisputed. For error to be harmless, the evidence must show beyond a reasonable doubt that *all* of the facts supporting *each* aggravating circumstance relied upon by the trial court were uncontested and supported by overwhelming evidence or

---

**7**    And by extension, the same language in section 1170.1, subdivision (d)(1).

**8**    "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and the *facts* underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170.1, subd. (d)(2), emphasis added.)

16.

found true by the jury given the jury's actual verdict and state of the evidence.[9] (*Lynch*, *supra*, 16 Cal.5th at p. 775.)

In this case, the record does not show that the aggravating fact that appellant racked his gun twice is undisputed, and nothing in the jury's verdict indicates beyond a reasonable doubt the jury would have found that fact true. The relevant evidence adduced at trial was only that a live round was found between the victim's car and appellant's car, and a second live round was found on a nearby street.[10] At the first sentencing hearing, the People conceded that "there [are] multiple ways that live rounds could hit the ground." The People also referenced a video but described the footage as showing that appellant "was manipulating the gun in some fashion, and then ultimately a live round was found on the ground." Likewise, the trial court at the first sentencing hearing did not find the gun was racked twice. Finally, the jury's actual verdict does not imply the missing fact. Appellant was convicted of involuntary manslaughter and attempted involuntary manslaughter on two separate victims, with a section 12022.5, subdivision (a) firearm use enhancement as to each count. This verdict and the state of the evidence supports the fact that appellant fired at least two shots, but does not provide any insight as to how appellant otherwise handled the firearm. On this record, the evidence that appellant racked the gun, and especially racked the gun twice, is disputable. Therefore, we cannot find the trial court relying on that aggravating fact was harmless beyond a reasonable doubt. Such error requires reversal.

---

[9] This issue is the primary ground for the dissent in *Lynch*, which argued that error was harmless so long as a single aggravating circumstance was proved in accordance with the Sixth Amendment, because a single aggravating circumstance was all that was required to render a defendant eligible for an upper term sentence. (*Lynch*, *supra*, 16 Cal.5th at pp. 790−791.)

[10] The People stated at the first resentencing hearing that the "other time that the live round was located was over on K street."

Appellant finally argues that a jury would not have found the three circumstances themselves to be aggravating. The Supreme Court in *Lynch* declined to address the interplay between the trial requirement for aggravating factors and "the current reference in the California Rules of Court to 'a nonexhaustive list of factors that may be considered circumstances in aggravation.'" (*Lynch, supra*, 16 Cal.5th at p. 770.) Because we find the error in this case was not harmless, we reverse the judgment and remand for resentencing, we do not reach the question of whether a jury must also find beyond a reasonable doubt that a circumstance pursuant to California Rules of Court, rule 4.421(c) is in fact aggravating. We conclude only that should a trial court rule that a fact or set of facts constitutes an aggravating circumstance which results in the imposition of an upper term, all such facts must be found true by a jury or judge in a court trial, in compliance with section 1170, subdivision (b)(2) or section 1170.1, subdivision (d)(2).

## DISPOSITION

The sentence is vacated, and the matter is remanded for resentencing consistent with this opinion. In all other respects, the judgment is affirmed.